# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0385** (Nicholas County 15-F-62)

**Misty Dawn Nelson,**
**Defendant Below, Petitioner**

**FILED**

**April 21, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Misty Dawn Nelson, by counsel Crystal L. Walden, appeals her jury conviction on charges of conspiracy to manufacture methamphetamine and possession of a substance to be used as a precursor to manufacture methamphetamine. Respondent the State of West Virginia, by counsel Gordon L. Mowen, II, filed a response in support of the circuit court's order. Petitioner contends that the circuit court plainly erred in finding reasonable suspicion for the stop of the vehicle in which she was a passenger and in finding that the search of her purse was voluntary.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 25, 2014, petitioner and two friends left their hometown in Calhoun County and traveled to Birch River to sell scrap copper.[1] After selling the copper, the trio traveled to Nicholas County and stopped at a Walmart, where petitioner purchased Sudafed. The trio then traveled to the Nicholas County home of the parents of petitioner's friend. As the trio were leaving the home, they passed Deputy Ellison of the Nicholas County Sheriff's Department who was alongside U.S. Route 39, running stationary radar.

When the trio's vehicle passed Deputy Ellison, the rear seat passenger in the vehicle turned around and looked through the rear window at the Deputy's vehicle. Deputy Ellison then pulled his vehicle into traffic and followed. The trio's vehicle pulled off the roadway into a private parking lot. Deputy Ellison, drove past the lot, turned around, and pulled into the parking lot where the trio's vehicle was parked. Two of the vehicle's occupants were standing outside the vehicle with the hood up, while petitioner was sitting inside the vehicle.

---

[1] Petitioner's boyfriend was the driver of the vehicle in which petitioner was a passenger.

1

Deputy Ellison approached the vehicle, on foot, to determine "if anyone else was in the backseat or anything . . . " and observed petitioner and cold packs sitting in plain view within the vehicle. The Deputy then asked for valid identification from the trio. Petitioner's boyfriend advised the Deputy that he did not have a valid driver's license. Petitioner and the other occupant produced identification cards.[2] Deputy Ellison "ran everyone's information through dispatch" and discovered that petitioner's boyfriend had a warrant for his arrest. Upon making this discovery, Deputy Ellison separated the trio. Petitioner's boyfriend was then arrested, handcuffed, and placed in the cruiser. Thereafter, Deputy Ellison asked petitioner's boyfriend for his consent to search the vehicle and the boyfriend provided such authorization. The boyfriend then "yelled" from the cruiser "Mr. Ellison, I'm not going to waste your time . . . the Crystal Drano is under the spare tire."[3]

As he was searching the vehicle, Deputy Ellison removed petitioner's purse from the vehicle.[4] Deputy Ellison stated that he could see a pharmacy bag in petitioner's open purse, but could not see the contents of the bag. Deputy Ellison then asked petitioner for her consent to search her purse, and stated, "I always go through female's purses with them watching me." Petitioner gave Deputy Ellison permission to search her purse, wherein he discovered Sudafed. Petitioner was placed under arrest and subsequently indicted on charges of conspiracy to manufacture methamphetamine and possession of a substance to be used as precursor to manufacture methamphetamine.

During pre-trial proceedings, petitioner filed a motion to suppress the evidence obtained by Deputy Ellison, including the items discovered in the vehicle and the Sudafed found in her purse. After a hearing, which included the testimony of Deputy Ellison, the circuit court denied petitioner's motion to suppress and found that both searches (of the vehicle and her purse) were lawful.[5] On December 9, 2015, petitioner's jury trial began. Petitioner testified at trial and admitted that she gave Deputy Ellison express consent to search her purse. When her counsel on direct examination asked her why she gave Deputy Ellison consent to search her purse, she responded, "I don't know. Like I said, I didn't feel good, I was fighting with [my boyfriend], and I just – [shook head] I didn't care." At trial, petitioner's counsel made no objection or challenge to the alleged violation of petitioner's rights "against unreasonable searches and seizures." Petitioner was found guilty on both the conspiracy and possession charges. It is from her conviction that petitioner now appeals.

---

[2] Neither petitioner nor the other occupant had a valid driver's license.

[3] During the search of the car and pat-downs of the occupants, Deputy Ellison found lighter fluid, Drano, lithium batteries, and cold packs.

[4] It is undisputed that the purse belonged to petitioner.

[5] Petitioner did not testify during the suppression hearing. Thus, the only evidence before the circuit court was Deputy Ellison's testimony that petitioner gave her express consent for the search of her purse.

On appeal, petitioner raises two assignments of error, both relating to the circuit court's rulings on petitioner's motion to suppress. We have long held that

> [w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

> [i]n contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under . . . the United States Constitution and . . . the West Virginia Constitution is a question of law that is reviewed *de novo* . . . Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.

Syl. Pts. 1 and 2, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

Petitioner concedes that that her trial counsel made no objection or challenge to the alleged violation of petitioner's rights "against unreasonable searches and seizures." It is a fundamental proposition of law that an appellate court generally will not entertain an alleged trial error unless it has been properly preserved at trial. *See State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d 114, 128 (1995). Therefore, on appeal, we must review the propriety of the circuit court's rulings as to whether the traffic stop with made with reasonable suspicion and the admission of the evidence seized from petitioner's purse for plain error.[6] "To trigger application of the plain error, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *Miller*.

Based upon our review of the record herein, we find no merit to petitioner's claims that the trial court committed plain error in permitting, at trial, the admission of evidence discovered by Deputy Ellison during his "stop" of the vehicle in which petitioner was a passenger. First, the vehicle at issue was stopped alongside the road and the hood of the vehicle was propped up when Deputy Ellison initiated contact with petitioner and her friends. There is no evidence to suggest that Deputy Ellison caused or ordered the vehicle to stop.

It is further undisputed that upon approaching the trio and their vehicle, Deputy Ellison asked for identification from the parties when they began to act "real fidgety" and "stuttery." Only one of trio possessed a driver's license. Petitioner's boyfriend also had an outstanding warrant for his arrest. Petitioner's boyfriend was then arrested and placed in the police cruiser.

---

[6] *See* Syl. Pt. 1, *State v. Marple*, 197 W. Va. 47, 475 S.E.2d 47 (1996), and Rule 52(b) of the West Virginia Rules of Criminal Procedure.

While in the cruiser, Deputy Ellison asked petitioner's boyfriend for permission to search the vehicle. Petitioner's boyfriend consented to the search. In fact, petitioner's boyfriend advised Deputy Ellison as to the location of a product used in the making of methamphetamine. Accordingly, we find that the circuit court did not commit plain error in allowing at trial the admission of evidence obtained by Deputy Ellison from the vehicle in which petitioner was a passenger.

Similarly, we find no merit to petitioner's remaining contention that the admission of evidence obtained as a result of Deputy Ellison's search of her purse constitutes plain error. Petitioner does not dispute that she provided Deputy Ellison with the express authority to search her purse, but argues that her agreement was simply a concession to authority. However, such argument is contrary to petitioner's own sworn trial testimony wherein she testified that she freely gave consent to Deputy Ellison to search her purse and explained that she had done so because she "didn't care" and was "mad at her boyfriend." Such an occurrence does not constitute plain error.

For the foregoing reasons, we affirm petitioner's December 9, 2015, conviction on charges of conspiracy to manufacture methamphetamine and possession of a substance to be used as a precursor to manufacture methamphetamine.

Affirmed.

**ISSUED:** April 21, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4